The first case today is Appeal No. 22-1748, RAI Strategic Holdings v. Philip Morris. Mr. Castanhas? Good morning, Your Honor, and may it please the Court. Before we dig into each of these three cases today, first I wanted to make sure that the Court is okay with us staying at our respective tables since we're aptly in the second one and aptly appellant again in the third one. We should be pragmatic about this. Please stay there. All right. Thank you very much. Let me also start by framing a little bit the three disputes that are before you today. This case involving the 915 patent is the first of the three appeals that are before you. It is an IPR. The second case involves the 123 patent. It is also an IPR. Those two patents work also in the prior International Trade Commission decision that this Court heard in October and affirmed at the end of March of this year that case is now final. The third case was not involved in the ITC case, but it may seem familiar in that it is a post-grant review case involving Reynolds 542 patent. One of the assertive pieces of prior art in that case is the Robinson patent, which is a predecessor to the same 123 patent, which you'll hear about in the second case, and the particular part of that patent that's at issue in the 542 appeal was also at issue, that particular paragraph in the specification, before the ITC and also before this Court. Now let me start- It must be a lot of money on these vape pens. Well, interestingly, they're not all just vape pens. Some of them are just heating of tobacco, and that's one of the distinctions. But in any event, let me dig in with regard to the 915 case, since that's the first case here. We present two principle issues on this appeal. First one is that the Board implicitly and improperly rewrote Claim 3, which says wherein the electrical energy source includes a capacitor to wherein the power source includes a capacitor. The second issue is that the Board improperly rejected the construction of electrical energy source that was given by the ITC, not appealed to this Court, as requiring a receptacle. What exactly is your proposed electrical energy source construction that you want us to adopt, or do you want us to adopt? So the construction that was given by the ITC is a receptacle that provides for transmission of electrical current from the power source to a heating member, where the receptacle is not limited to a structure that requires wiring or insertion. And that, of course, takes into account the notion of- So that's the one you want us to adopt? Well, we want the ITC construction adopted, absolutely. And that was rejected by the Board here. But let me start with what I think really is the overarching problem with both of these issues. And that is the basic conceptual flaw with the Board's approach here. And it stretches across both of these issues. And it has to do with the fact that electrical energy source and power source, as used in these claims, are actually separate structures. They are different terms. That means they're different things. The claims tell us that the two things are located in two different parts of the device. The power source is in the control unit section. And the electrical energy source is in the receiving end. Do you agree that the specification refers to electrical energy source and receptacle as different components? I don't think I agree that the specification refers to them as different components. I think that the specification refers to them largely interchangeably. It describes- You're asking the electrical energy source and receptacle, right? That's right. I want to make sure I'm answering your question. So it describes the electrical energy source as both an actual and a physical receptacle. That's the language that's in Appendix 82, Column 23. The first sentence talks about an electrical receptacle that is an electrical connection. And let's talk about that term- Can you look, though, in Column 7, Lines 4 through 16, where it talks about receptacle and electrical energy source? It says a receptacle that is housed in the electrical energy source. Do you see that? I do see that, yes. Housed in the electrical energy source. So based off of that statement, do you agree that they would be different components? Well, I don't think I would agree that they're different components. I would say that it says that the electrical energy source has to have a receptacle as part of it, whether you say housed in or not. One thing that's important to note, by the way, is that my friends on the other side have made a lot of the language about housed in and that sort of thing. The Board didn't rely on that at all. Do you agree that the claims themselves, when they refer to an electrical energy source and the words that surround that, that doesn't require a receptacle, right? There's nothing in the claim that refers to a receptacle. We need to look to the specification or other intrinsic evidence to understand that in this case, the electrical energy source has a receptacle. I don't think I'd entirely agree with that because we're, first of all, talking about the term source, all right? So analogies are always dangerous in patent cases, but I think about the water flow in my house. This morning when I turned on my shower, the water came from the hot water tank. That's the source. That's the place that's holding the water and sending it up through the pipes. That's the electrical circuitry. This is actually... You're suggesting that every electrical energy source has to have a receptacle? I would say that every electrical energy source is a receptacle or at least has to have one as part of it. That's the notion of source. And if all we had was the claim language, maybe I'd be having a harder argument here, but then I've got the specification. And the specification tells me all about the receptacle. It says that it can be a physical receptacle, but it's also an actual receptacle for energy. And here's the thing that we know it's not. It's not just a place in the part of a circuit that allows for current flow. That's really where the board went off base here because you'll see references all throughout the board's decision as, our decision is justified because this thing, say the capacitor, say even the parts of the heater that aren't even conducted, are in the current path. You can find that pages 30 and 33. Those are with regard to the alternative constructions with and without a receptacle. And also at Appendix 40 with regard to Claim 3. I guess my concern is what if we read all of these relevant passages that talk about an electrical energy source, and let's accept for the moment that this is not an understood term, it has no default meaning in this art. The patent drafter elected to make up this word. And so we're forced to dig through the spec and try to figure out the best meaning. And the references to electrical energy source do sometimes, maybe oftentimes, mention a receptacle, but it doesn't feel so definitive in the way it describes how it can be a receptacle or it can be characterized as an electrical receptacle. And therefore, we don't feel like there was a moment anywhere, alone or in combination, a definition that requires a receptacle. Then, aren't we left with basically what the board landed on, which is some element that receives energy from the power source and transmits it to the heater element? But I don't think you are, Judge Chen, and here's the reason why. First of all, what I think you're left with actually is the ITC's analysis. You're also... Well, that injected the word receptacle into the construction, and I don't recall that the ITC, there was a real contest over whether a receptacle needed to be in the construction. Not like it was here. Well, I think it was renewed here, but there was no question that it was disputed. In fact, it was disputed largely as a matter of indefiniteness by the other side, and that argument was rejected, and then they did not take the issue up. But let's take a look, by the way, at the claim language here. The claim language really helps answer this question, because the claim language, when it wants to talk about something being within a flow of current, it uses terms like electrical contact... I'm sorry, a component that forms an electrical connection. That's in the receiving end portion of the claim. It talks about current flow in the control unit section of the claim. So what we know about an electrical energy source, just from the claim language alone, is that it's not just a point on a circuit. And that's really what ended up happening here, was that this case became, because the board didn't honor the structure required by the patent claims, the case ended up becoming a contest about who can color what, and who can say, this is the electrical energy source and this isn't. And this led to a ton of absurdities. Let me just point out a few of those here. Are you arguing for lexicography here? No, not just lexicography. In fact, if you look at the construction... You said not just. Are you arguing for lexicography or are you not? We are arguing that there is lexicography, but there is more than just lexicography. That's what we are arguing. And if you look at the arguments that we made in the nine pages of argument that are located in, I forgot exactly where that is, 372 to 380 of the appendix. Those are our arguments. You'll see that we were arguing lexicography, but we were also arguing that there was more. It was a holistic Phillips-type contextual construction. And when you look at what ended up happening before the board... What's your best intrinsic support for lexicography? My best intrinsic support for lexicography are the two references where receptacle or that's, for example, in appendix 82, column 23, lines 41 to 42. And then there's the also IE redefinition at appendix 72, column 4, lines 63 to 66. And then on top of that, really the entirety of the paragraph that starts at appendix 82, column 23, really does say it's a receptacle. But let me, before I sit down here and let my friend from the other side talk about this case, point out some of the absurdities that the board's dismissal of the important structural aspects of this claim led to. Obviously, it got to the point where Collins said that the capacitor was part of its power source. That magically became part of the electrical energy source simply because it was in the current path. So another one. The electrical energy source that was supposedly in Collins included conductor fingers 165. And the board said that was a receptacle because it receives a physical structure. Namely, conductor fingers 165. So it became a structure that received itself. Collins. That's relevant if we accept your alternate construction and disagree with the board. I think all of these absurdities are relevant under either construction because both of them really run out. Can we call them errors instead of absurdities? We can call them errors, but they really do reduce to things that just don't make sense. And the reason I use the term absurdity is it really shows that there is a lack of substantial evidence under any construction of the terms. So another point is Collins' fingers are a physical structure that the electrical energy source, including terminals 167, were said by the board to be received in the same way that the 915 patents, electrical energy source 220, receives contacts 410. But those contacts 410 and the 915 patent are part of the heating member, which the claims say has to be separate. The word separate is actually in the claim. And then finally, the board identified the part of the electrical energy source that was positioned at the receiving end. That's the first limitation of the claim, at the receiving end. As they said, that the part of the electrical energy source that was positioned there was heater support arms 161. That's in appendix 25. But that's part of the heating member. And again, the claim language says that the heating member has to be separate. I'll come back on rebuttal. Thank you for your indulgence. Thank you. Mr. Bell? Good morning, Your Honor. May it please the court. I'd like to start with the electrical energy source construction. But before I do that, just a bit of framing. And my friend on the other side did get to it at the end of this argument. But this is all about substantial evidence. We submit for all of the arguments here, whether it's claim three or the electrical energy source, because the board ultimately found under either construction, there was evidence and there was, in fact, that taught by Collins. So I didn't hear my friend explain why there wasn't substantial evidence under his construction. So I'll leave that be for now. But I think the board absolutely got it right on electrical energy source and framed it properly in terms of lexicography, precisely because that's how they argued it below. Principally, that's how they- Is it your view that an electrical energy source can be nothing more than a conductor? It can essentially be whatever takes the energy from the power source to the heater. And that can take- What I'm wondering is, why even bother using the term electrical energy source in the claim? What work is it doing? Power source, we know what that is. That's got a real function. Heater element, we know what that function is. Electrical energy source, you don't even need it. You could just say, you know, power source coupled to the heater element and be done with it. Why have the term electrical energy source if it is really doing nothing more than being a conductor? Here's how I think of it, Your Honor, and I've struggled with this question too, just to kind of conceptualize it. As I view it, the electrical power source is essentially the battery, kind of the reservoir where everything ultimately comes from. In my friend's analogy, that would be the water heater in the basement. And then to get it where you want it to go, though, is another matter. And so to pick up on the analogy, I would say if you're in your kitchen and you ask where's the source of your water, you'd say it's the faucet, right? It's the conduit. It's the thing that brings it from that reservoir to an easier, more convenient way to get to it. So if you're thinking about this device, when you stick something in, you could potentially have the battery itself kind of connect in some way. But I think what the claim was getting at is there needs to be something that makes that facilitate that, make it more convenient, easier to get it in and out. Because remember, these are disposable ones. So they do go in and out for the flavor and so on. That's how I kind of think of it and why the patent has that in there. And then when you look at what they're trying to do, and I hear here they're now saying, well, it may just have to include a receptacle. Just for clarity, my understanding of their argument below, and it was at the pages my friend mentioned, appendix 372 to 75 in particular, they argued for an express definition of the term as a receptacle. They also called it a special definition, a limiting definition. So I don't think we can fault the board for kind of putting it in those terms and then looking at whether there was in fact an express definition. But what you see in the patent, every time it talks about a receptacle, it uses words like can or may. It doesn't use the traditional definitional type things. And in fact, the patent elsewhere does so. It does in other places say this term is intended to me. And it does elsewhere say these two terms are interchangeable. It's talking about other terms. The fact that it doesn't do so with respect to the term they want to say is interchangeable is significant evidence. This court has called it significant evidence, maybe not dispositive, but certainly in the analysis of whether there is an intended definition here, I think it is definitely significant. Do I recall correctly that the board actually relied on that? The fact that some terms in the specification were expressly defined in a particular way, whereas this term was not? Correct. Correct. That's exactly right, Your Honor. And then when the patent uses the term IE, which in some contexts does indicate definitional, the board also addressed that and explained why in the context of that usage, IE was just In that embodiment, and it's at column 40, line 4, excuse me, column 4, lines 63 to 66 at appendix 72, it said that the electrical contacts permanently engage, quote, the receptacle, IE, the electrical energy source. Meaning it is in fact in this embodiment there is a receptacle. And we don't dispute that the electrical energy source in some embodiments could be a receptacle. But it doesn't have to be. And I think that's what the rest of the patent, including that housed in that Your Honor mentioned earlier, I think that really kind of crystallizes how they are not interchangeable. They're not definitional. There's just one thing that can be inside that doesn't have to be inside the other. What is the cleanest recitation of the construction of electrical energy source, either in your briefing or in the board's decision? I just want to make sure I have that crystallized. Sure. So at pages A10 to 16 is where the board discusses it. And it references, I think, a number of different places in the patent specification, including, for example, column 23 and column 4, where it talks about providing transmission of electrical current from the power source to the heaters. Which page are you looking on specifically? Oh, are you referring to the patent right now? Apologies, Your Honor. I did switch to the patent. So we could look, for example. And just to reiterate my question, I just want to make sure I have the cleanest recitation of the construction of this term of dispute. Sure. So our construction was no construction was necessary. And ultimately, the board adopted that. So really, we're kind of in the situation of saying, what? It's not. So it's not limited to a receptacle. But what it is, for example, at column 2, appendix 71, lines 52 to 55, it talks about an electrical energy source that provides power to the electrical heating number. So that's one instance. In column 4, lines 5 to 9, here's one of those instances where it says it can be a receptacle. It doesn't have to be. But it can be a receptacle. And what does it do? It provides for transmission of electrical current from the power source to the heating number. So it can take different forms, one of which could be a receptacle. But what it ultimately does is a structure that provides that electrical current from the power source to the heating number. So in your view, the term is defined more by what it does, as opposed to a specific structure. Well, I would say somewhat more by what it does. But it also definitely includes example structures. That, as is common, the structures can take different forms. So you think about an interface sometimes in a computer. It says there's some structure, but it's not limited to a particular structure. Exactly right, Your Honor. It's not limited to any particular structure. It's not limited to— So therefore, it is a function-based construction. Well, so Your Honor is on to something here in that we argued before the ITC that this was purely functional. And that was ultimately rejected in favor of the ITC's construction. But we think at this point, we have a construction where, obviously, that's not an issue here, whether it's indefinite or not or anything like that. But we have some structure, examples such as a receptacle. It doesn't have to be a receptacle. And ultimately, it has to be that kind of conduit, if you will, maybe is a useful term, something facilitating the provision of one thing to another. You think in the computer— For the board to say this is just plain and ordinary meaning of the term electrical energy source, that doesn't make sense to me because electrical energy source doesn't have a plain and ordinary meaning. Well, so I think a qualified yes. I think it was right to do so here in the context of rejecting the proposal by the other side, which was to limit it to receptacle. So if you think about, is it the plain and ordinary meaning to include a receptacle or to define them interchangeably? I think the answer to that is surely no. And then beyond that, I think it's fair to look at what the board did and said, OK, it's the plain and ordinary meaning rejecting that. And what does it do then? What are we left with, in a sense? So if you want to view that as a construction or just an understanding of the term, I don't know that it makes much difference whether you slap on plain and ordinary meaning in this context. You're right. It, in some context, looks like a kind of made-up term. To me, at page 33 is when they're applying, when they're doing the mapping of columns to the electrical energy source as claimed. That's where the board reveals what its understanding is, in the middle of the page, when it points out that there is no dispute that terminals 167, conductor fingers 165, and fifth bends 165A transmit electrical current from power source 22, heaters 162. And so, to me, that's, they capture there what they understand this term to do. But it's in the context of the mapping, not in a separate claim construction section, per se. I think that's fair. That reveals what the board's essential understanding of it is. The bottom line being, the proposal put forth by the other side was to limit it to receptacle, and that shouldn't be. But the board did actually analyze it under the receptacle construction, and that's why we think it ultimately doesn't matter here. Either way you want to think about it, even under the ITC's construction, which we argued before the board that that wouldn't make a difference either. And the board agreed with that, because what does the receptacle have to do? It has to receive electrical energy and provide electrical energy. Did that claim construction come up on appeal for this board? It did not. It did not, Your Honor. Can we talk about the arguably creative box drawing that the board did when it was mapping Collins and Counties 71 to these different limitations? Sure. And specifically dependent claim three, where now the electrical energy source necessarily includes a capacitor. Yes, thank you, Your Honor. And now they break into the section of Collins, which describes a power source that's having a capacitor, and the board takes that capacitor out of Collins' power source and slaps it into, and redesignates it as being part of Collins' so-called electrical energy source. So can you comment about that? Absolutely. So figure nine, as annotated, and we produced this in our brief, red brief, page 32. I think this is what Your Honor is referring to as the line drawing that the board did. And I think the bottom line is going to be that there is substantial evidence, even if this court may be looking at it in the first instance, might come out a different way. But if you take the board's construction, and I think actually this works under either construction. You think about- Was there a claim construction of what does it mean to include a capacitor? No, not that I'm aware of. It was not raised as a claim construction issue, I think, until now. I think in their brief, they want to make it into something about the scope of claim three, but I don't think that's really what the issue is. I think if you, so taking the two options, if you accept the board's construction, then the stuff highlighted in green there, I think is fairly said to provide energy from the battery, which is highlighted in blue. It provides it first to the capacitor, which charges it through that switching mechanism. And then when you activate the switch, it flips to the other side, and then that discharges the power from the capacitor to the heater. And that's ultimately all the board's construction required. To what extent should we be informed by Collins' own description of this as the capacitor being part of his own power source? Yeah, I think it's certainly fair to consider it, and I think the board did consider it. I think, to your honor's point from before, I think in this patent in Collins and in the underlying counts, the two terms are even more fuzzy, if you will, than in the 9-1-5 in the sense that Collins also talks about, and this is at column 1, lines 28 to 29, it says it can have a source of electrical energy, electrical energy source, terms mixed to brown, such as a capacitor. So it says that the source of electrical energy can have a capacitor. Similarly, dependent claim 55 of the underlying counts reference specifically says that it including a capacitor. And what that shows, I think, is that when the patent is using the term power source elsewhere, it meant it in a somewhat broader sense than is being applied in the patent at issue here. And there's no distinction in the claims there that made any difference, so there was no real reason to drill down into the differences between the two. And see, I think the board saw through that and ultimately looked at what's going on here. Do we have something that has a capacitor that's taking the energy from a battery and supplying it to facilitating, conduit, whatever you want to call it, to the heaters? And I think that's really what's going on. Thank you, Bill. Thanks very much. Thank you so much. In that event, we'd ask the court to please affirm. Judge Chin, the arguably creative box drawing was only allowed because structure in the claims was not honored. Let me give you the most compelling example of that. As I mentioned earlier, the board identified the part of the electrical energy source that is positioned at the receiving end. That's, again, the first requirement of Claim 1. And this is at page Appendix 25. They identified the part of the electrical energy source that's positioned at the receiving end as Heater Support Arms 161 in Collins. Do you know what Heater Support Arms 161 in Collins are made of? Insulating material. Even under this broad, anything that can conduct electricity can be an electrical energy source, that isn't it. It wasn't just arguably creative box drawing. It was only box drawing that was allowed because the electrical energy source, which is a what the board called a plain and ordinary meaning construction, but in fact ended up being an invitation to draw boxes anywhere you want in a circuit and say, like the Prego pasta sauce, it's in there. Don't worry, it's in there. But it had to be an electrical energy source. That electrical energy source had to have particular structures, too. Take a look at what the electrical energy source has to have. A component that forms an electrical connection with electrical contacts on a separate electrical heating member. And it also has to have a projection. Some of those were ignored when the board decided it wanted to ignore it in finding what it thought was enough evidence to support the board's decision here. The board's decision is infected with legal error. The structure was not honored. And as a result, there's no substantial evidence, as my friend says, that can support this decision. We urge the court to reverse and send the case back. Thank you. Okay. Thank you. Counsel, the case is submitted.